SRM/JLT/pjh - **12089**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY GARDNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | 08 C 1275 |
| | ) | Judge Kocoras |
| JEFFERSON COUNTY, ILLINOIS, KANE | ) | Magistrate Judge Nolan |
| COUNTY, ILLINOIS, KANE COUNTY | ) | |
| SHERIFF'S OFFICE, and JEFFERSON | ) | |
| COUNTY SHERIFF'S OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME Defendants, JEFFERSON COUNTY AND JEFFERSON COUNTY SHERIFF'S OFFICE, by and through their attorneys, STEPHEN R. MILLER, NIKOLETA LAMPRINAKOS AND JOHANNA TRACY of MYERS MILLER & KRAUSKOPF, LLC and in further support of their Motion to Dismiss Plaintiff's First Amended Complaint at Law (hereafter "Complaint"), state as follows:

## I.    FACTS

On January 13, 2006, the Plaintiff, Kimberly Gardner, was a pre-trial detainee in the custody of the Kane County Sheriff.  (Doc. 1, Exhibit C at ¶7)  Due to jail overcrowding, Gardner and several other detainees were selected to be housed in the Jefferson County Jail.  (Doc. 1, Exhibit C at ¶ 8.)  While detained in the Jefferson County Jail, Plaintiff alleges that she  had inappropriate sexual contact with male jail personnel.  (Doc. 1, Exhibit C at ¶ 11.)  Plaintiff also alleges that she was a victim of statutory rape while an inmate at the Jefferson County Jail.  (Doc. 1, Exhibit C at ¶ 12.) Plaintiff has filed a two count complaint against Jefferson County, Jefferson County Sheriff's Office, Kane County, and the Kane County Sheriff's Office alleging that they were  negligent (Count I) and  violated her rights under 42 U.S.C. §1983 (Count II).

## II.     STANDARD

In ruling on a motion to dismiss, the allegations of the Complaint, and all reasonable inferences therefrom, are taken as true. *Baker v. Westinghouse Electric Company*, 70 F.3d 951, 954 (7th Cir. 1995). Although a Plaintiff is not required to set out in detail all of the facts upon which her claim is based, the Complaint must allege sufficient facts to outline a cause of action. *Kyle v. Morton High School*, 144 at 3d 448, 455 (7th Cir. 1998).  When ruling on a motion to dismiss, the court is not required to accept as true legal conclusions alleged or inferred from the pleaded facts. *Baxter v. Vigo County School Corporation*, 26 F.3d 728, 730 (7th Cir. 1984). Here, as Plaintiff's Complaint fails to set forth a cause of action which would entitle her to relief, Plaintiff's Complaint should be dismissed.

## III.     ARGUMENT

### A.     COUNT I

#### 1.     The Illinois Local Governmental and Governmental Employee Tort Immunity Act Grants The Sheriff Absolute Immunity For The Alleged Negligent Acts

The Illinois Local Governmental and Governmental Employee Tort Immunity Act (hereafter "Tort Immunity Act") provides:

> "Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such a facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein.  Nothing in this Section requires the periodic inspection of prisoners." 745 ILCS 10/4-103.

> *       *       *

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.  745 ILCS 10/2-201.

These sections of the Tort Immunity Act do  not contain any exceptions.  They provide local governmental entities and their employees with  absolute immunity for certain actions.  Illinois courts have generally upheld these provisions of the Tort Immunity Act.

Courts have found Section 745 ILCS 10/4-103 of the Tort Immunity Act gives absolute

2

immunity to the Sheriff in the formulation of policy in operating the jail, and have rejected assertions that any exception exists, even for willful and wanton conduct. *Jefferson v. Sheahan*, 279 Ill. App. 3d. 74, 77-81 (1st Dist. 1996). "However, absent more specific discussion of willful and wanton conduct as it applies to individual sections of the Tort Immunity Act, particularly section 4-103, this court will continue to focus on the clear legislative intent. This focus leads to the conclusion that the legislature did not intend there to be an exception for willful and wanton misconduct in Section 4-103, none may be judicially created." *Jefferson*, 279 Ill. App. 3d at 80 (while distinguishing cases implying willful and wanton exceptions, which were rejected by the Illinois Supreme Court subsequent to this case, discussed below).

Additionally, courts have found the Sheriff is an officeholder vested with discretion entitled to the absolute immunity granted by Tort Immunity Act Section 745 ILCS 10/2-201. *Thiele v. Kennedy*, 18 Ill. App. 3d 465, 468 (3rd Dist. 1974) (upholding immunity based on Section 745 ILCS 10/2-201, while implying exceptions which are now rejected by the Illinois Supreme Court, discussed below).

The Illinois Supreme Court subsequently rejected the imposition of exceptions on the absolute immunity provisions of the Tort Immunity Act. "When the plain language of an immunity provision in the Tort Immunity Act contains no exception for willful and wanton misconduct, we have reasoned that the legislature "intended to immunize liability for both negligence and willful and wanton misconduct." (citation omitted). "This court applied that reasoning in *Harinek* and *Chicago Flood Litigation* to hold that Section 2-201 of the Tort Immunity Act immunized defendants against all allegations of willful and wanton misconduct." *DeSmet v. The County of Rock Island*, 219 Ill. App. 2d 497, 513 (2006) (citations omitted).

The Supreme Court further rejected the imposition of a special duty exception to the Tort Immunity Act. "To the extent that *Doe* held the special duty doctrine could override statutory immunities, that portion of the decision was overruled by this court, *sub silentio*, in *Zimmerman.*" *Desmet*, 219 Ill. 2d at 518 (citation omitted).

In this case, the policies of which the Plaintiff complains, are precisely the type of complaints that the courts in *Jefferson* and *Thiele* found the Sheriff to be immunized against. Any attempt to draft around the Tort Immunity Act runs headlong into the Illinois Supreme Court decision in *DeSmet*, which rejected exceptions to the absolute immunity provisions of the Tort Immunity Act.

*See was Ware v. The City of Chicago*, 375 Ill. App. 3d 574, 583 (1st Dist. 2007).

In this case, the policies which the Plaintiff complains of, namely inmate transfer decisions, supervision of employees, and management of the jail facilities, are the types of complaints against which the courts in *Jefferson* and *Thiele* found the sheriff to be immunized. County sheriffs are by statute given the explicit authority to make the discretionary decision to transfer inmates when it is necessary in the sheriff's opinion. 730 ILCS 125/14.

### 2. Units Of Local Government Are Immune When Their Employees Are Not Liable

The Complaint fails to name, either explicitly or by implication, any individual defendants employed by the County or the Sheriff, who could physically have been present at events that took place in the Jefferson County Jail.

The Tort Immunity Act provides that "[a] local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. As the potential tort liability of a public entity is coextensive with the liability of its employees, and none are named in this case, the County and Sheriff are immunized against this complaint. e.g. *Wilson v. Hunk*, 51 Ill. App. 3d 1030, 1034-1035 (4th Dist. 1977) (because plaintiff failed to state a cause of action against a city police officer who allegedly made an unlawful arrest, no independent cause of action for damages could be maintained against the city that employed the officer); *Madonna v. Giacobbe*, 190 Ill. App. 3d 859, 870 (2nd Dist. 1989) (since employee of city could not be held liable under allegations of plaintiff's complaint for intentional interference with business capacity, city could not be found liable in view of immunity found in 745 ILCS 10/2-109). Simply put, there is no type of "independent negligence" that exists to assert liability against a public entity absent actions by an employee.

### B. COUNT II

### 1. Count II Should Be Dismissed Because Plaintiff Did Not Exhaust Administrative Remedies Pursuant to 42 U.S.C. 1997(e)(a)

As a preliminary matter, the Prisoners Litigation Reform Act (hereafter "PLRA") provides that "no action shall be brought with respect to prison conditions under 42 U.S.C. §1983...by a prisoner confined in a jail...until such administrative remedies as are available are exhausted." 42 U.S.C. §1997(e)(a); *see also Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed. 2d 958

(2001); *Massey v. Helman*, 259 F.3d 641 (7th Cir. 2001).  Under the PLRA it is well-settled that a prisoner must exhaust all available administrative remedies before bringing a constitutional claim under Section 1983.  Thus, courts have consistently required inmates to exhaust the available grievance procedures.  *See Booth,* 532 U.S. at 741; *Zachary v. Smith*, 255 F.3d 446, 452, (7th Cir. 2001).  Courts have also interpreted the PLRA to require an inmate to complete the grievance process by following any specific rules and procedures established by the state.  *Pozo v. McCaughtry*, 286F.3d 1022, 1025 (7th Cir. 2002).  This forecloses an inmate who does not properly take each step within the administrative process from litigating his claims.  *Id* at 1024.  A prisoner, however, is only required to exhaust those administrative remedies that are "available" to him. *Lewis v. Washington* 300 F.3d 829, 833 (7th Cir. 2002).  As such, if an administrative remedy is deemed "unavailable," the prisoner may bring the lawsuit despite the fact that he has not exhausted his administrative remedies.  *Id.*

Plaintiff has failed to plead any fact that states or from which it could be inferred that Plaintiff satisfied the above requirements.  Plaintiff has not pled one fact from which this court could infer that Plaintiff exhausted or even availed herself of  her administrative remedies as required by 42 U.S.C.1997e(a), nor has Plaintiff pled that the administrative remedies were unavailable to him. For this reason, Count II must be dismissed.

### 2.     Count II Should Be Dismissed Because Plaintiff Fails to State a Claim of Municipal Liability Under the Notice Pleading Standard

While §1983 complaints are not subject to heightened pleading standards, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), Plaintiff's complaint is insufficient even under the "notice pleading" standard.  Notice pleading requires plaintiffs to make a "short plain statement of the claim" thereby notifying the defendant of the grounds upon which the claim rests.  *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). Plaintiff must allege some fact to suggest that a specific municipal policy exists.  <u>Id</u>.  If not, boilerplate allegations would allow plaintiff's claims to survive a motion to dismiss without any basis for establishing that a policy exists.  <u>Id</u>.  To permit such pleadings against a municipality would result in allowing suits to be filed on a theory of *respondeat superior* which was expressly rejected by the Supreme Court in *Monell v. Dept. Of Social Services*, 436 U.S. 658, 690-91 (1978); *Strauss*, at 768.

To be sure, the pleading requirements of *Strauss* have been questioned after the Supreme Court's decision in *Leatherman*. However, the *Strauss* Court explicitly stated that its holding did not impose a heightened pleading standard in claims alleging municipal liability. *Strauss*, 760 at 769 ("We do not mean to imply that a plaintiff must plead in greater detail."). Instead, it merely stated that a complaint must plead "some fact" supporting the allegation that a municipal policy exists. Id. The standard imposed in *Strauss* explicitly rejects the heightened pleading standard requiring "detail and particularity" at issue in *Leatherman*. However, even after *Leatherman*, this jurisdiction has insisted that plaintiffs plead some factual basis for the allegations. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Plaintiff's Complaint, however, fails to allege "some fact" that suggests that the sheriff's department maintains any policy which is deliberately indifferent to the safety of the inmates it houses. The Complaint is devoid of any allegations that the Jefferson County Sheriff's Department maintained any official or unofficial policy which operated in violation of Plaintiff's Substantive Due Process rights. Count I should be dismissed because Plaintiff has not pled any allegations which would indicate that Defendants maintained an unconstitutional policy or custom.

> **3.** **Count II Should Be Dismissed Because Plaintiff Cannot Prove That The Jefferson County Defendants Violated Her Constitutional Rights**

Section 1983 provides a cause of action for violations of certain federal rights but does not create any new substantive rights. *Albright v Oliver*, 510 U.S. 266 (1994). To state a claim for relief under §1983, Plaintiffs have the burden of alleging two elements with some factual detail: (1) that they suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that a person acting "under color of law" caused the deprivation, either by an act or omission. *Baxter v. Vigo County School Corp.,* 26 F.3d 728 (7th Cir. 1994).

Plaintiff requests relief under §1983 by generally alleging a violation of her rights under the Fourteenth Amendment of the United States Constitution. Count II of Plaintiff's Complaint alleges that Defendants failed to protect her from harm. Namely that, due to the inadequate training, supervision and control of the Jefferson County jail guards, Plaintiff was a victim of statutory rape while incarcerated in the Jefferson County Jail. Such claims are often rooted in the Eighth Amendment's Cruel and Unusual Punishment Clause, which imposes upon prison officials the duty

to "take reasonable measures to guarantee the safety of inmate." *Farmer v. Brennan*, 511 U.S. 825, 832, 128 L.Ed. 2d 811, 114 S.Ct. 1970 (1994), *quoting, Hudson v. Palmer*, 468 U.S. 517-526-27, 82 L.Ed. 2d 393, 104 S.Ct. 3194 (1984).  The Eighth Amendment's prohibition against cruel and unusual punishment gives rise to the constitutional rights of a convicted prisoner.  A pre-trial detainee's rights are distinct from a convicted prisoner's rights as the State cannot punish a pre-trial detainee.  Therefore, the source of a pre-trial detainee's rights is the Fourteenth Amendment's Due Process Clause.  *City of Revere v. Massachusetts Gen. Hosp.* 463 U.S. 239, 244, 77 L.Ed. 2d 605, 103 S.Ct. 2979 (1983).  Although Plaintiff's claim arises under the Fourteenth Amendment, not the Eighth Amendment, *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002), states that there is "little practical difference between the two standards," *See also, Weiss,* 230 F.3d 1027, 1032 (7th Cir. 2000).  "The due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protection available to a convicted prisoner, therefore, §1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Bell v. Wolfish,* 441 U.S. 520, 535, n.16, 545, 60 L.Ed. 2d 447, 99 S.Ct. 1861 (1979);  *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999).  In a due process challenge, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous that it may be fairly said to shock the conscience.  *County of Sacramento v. Lewis,* 523 U.S. 844, 847 (1996).  However, in the same opinion, the Supreme Court noted that "deliberate indifference" as a standard of culpability is "sufficient to identify a dereliction as reflective of municipal policy and to sustain a claim of municipal liability for failure to train an employee who causes harm by unconstitutional conduct" *Id.;* See *Canton v. Harris*, 489 U.S. 378, 388-89, 103 L. Ed. 2d 412, 109 S.Ct. 1197 (1989).  While the "shock the conscience standard governs government actions in dangerous, fluid situations like high speed automobile chases or prison riots, the lower standard of 'deliberate indifference' applies in custodial situations when government actors actually have a chance to deliberate."  See *County of Sacramento*, 423 U.S. 833 at 851-53.  Under either standard, Plaintiff has failed to state a cause of action and therefore Count II should be dismissed.

    a.    <u>Count II Should be Dismissed Because The Jefferson County Defendant's Conduct Does Not Shock the Conscience</u>

The Substantive Due Process Clause of the Constitution, under which Count II of the Complaint arises, protects individuals from government action which is so malicious or egregious

7

that it shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1996). To satisfy this standard, the Seventh Circuit has determined "a plaintiff [must] show misconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but severe mental suffering, in the plaintiff." *Barnhill v. Doiron*, 958 F.2d 200 (7th Cir. 1992) (internal quotes and citation omitted). Although "the measure of what is conscience shocking is not a calibrated yard stick," it does provide some guidance. *County of Sacramento*, 523 U.S. at 847. In order to meet the conscience shocking standard, Plaintiff has to allege that Defendants intended to injure her. *Id.* at 849.

In this case, Plaintiff's allegations do not establish that the way in which the Jefferson County Sheriff's Department employees were supervised, trained, evaluated or allowed access to female inmates shocked the conscience. The Complaint only alleges that Defendants failed to properly supervise sheriff's department employees, failed to prevent sheriff's department employees from having unsupervised access to Plaintiff's cell, allowed communication of an inappropriate sexual nature between Plaintiff and male prison personnel, failed to have adequate prison matrons and failed to properly assess and train sheriff's department employees. (Doc. 1, Exhibit C at ¶ 10.) These allegations fail to establish that the Defendants acted with the specific intent to harm Plaintiff. Plaintiff's complaints are limited to general statements concerning the training and supervision of jail guards. In fact, Plaintiff's own Complaint identifies the acts as "negligent and careless acts or omissions." (Doc. 1, Exhibit C at ¶ 10). It is well established that it is insufficient to merely allege negligent conduct. *County of Sacramento*, 523 U.S. at 849 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1998). As a result, Plaintiff cannot satisfy the conscious shocking standard and Count II should be dismissed.

        b.      <u>Alternatively, Count II Should Be Dismissed Because The Jefferson County Defendants' Conduct Was Not Deliberately Indifferent</u>

Plaintiff's allegation that the Jefferson County Defendants failed to protect her is governed by the Supreme Court's decision in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 195-96 (1989). Generally, there is no duty to protect individuals from harm. <u>Id</u>. In *DeShaney*, the Court determined that in some circumstances, such as when an individual is in police custody,

a "special relationship" exists between the individual and the government so that there is a duty to protect the individual from harm.  Id.  When a special relationship exists, the plaintiff must prove that the defendant acted with deliberate indifference in protecting him from harm.  *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997).  As the term "deliberate indifference" implies, this standard is only sensibly employed when actual deliberation is practical.  *County of Sacramento*, 523 U.S. at 851-853.  The Seventh Circuit has defined "deliberate indifference" as "conscious disregard of known or obvious dangers."  *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998).  Mere negligent conduct does not implicate the Due Process Clause.  *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed. 2d 662 (1986).  Deliberate indifference "amounts to criminal recklessness-the defendant must have known that the plaintiff was at serious risk of being harmed, [and] decided not to do anything to prevent that harm from occurring even though he could easily have done so."  *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998), *citing West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997) (internal quotations omitted).  It requires a deliberate choice with respect to a plainly obvious danger.  Id.

The Complaint only alleges that Defendants failed to properly supervise sheriff's department employees, failed to prevent sheriff's department employees from having unsupervised access to Plaintiff's cell, allowed communication of an inappropriate sexual nature between Plaintiff and male prison personnel, failed to have adequate prison matrons and failed to properly assess and train sheriff's department employees.  (Complaint at ¶ 10).  Each of these specifications, however, fails to rise to the level of criminal recklessness necessary to satisfy the deliberate indifference standard.  Plaintiff herself describes these actions as "negligent and careless acts or omissions."  (Doc. 1, Exhibit C at ¶ 10).

There is no allegation or suggestion that the Jefferson County Defendants undertook any of these actions with the intent of causing injury to the Plaintiff.  There is no allegation that the Jefferson County Defendants trained and supervised jail personnel in such a manner that it would be obvious that an inmate would be injured.  There is similarly no allegation or suggestion that the Jefferson County Defendants knew that any jail personnel had unsupervised access to Plaintiff or were communicating inappropriately with Plaintiff and that they disregarded the risk associated with it.  In the absence of any allegation that Defendants were deliberately indifferent to a known or obvious risk that Plaintiff would be injured, Plaintiff cannot establish that the Jefferson County

Defendants were deliberately indifferent to a known or obvious risk of harm. As a result, Plaintiff cannot establish that her Substantive Due Process rights were violated and Count II of her Complaint should be dismissed.

                         c.    <u>Count II Should Be Dismissed Because Plaintiff Cannot Prove That The Jefferson County Defendants Violated Her Rights Under the Fourth Amendment, Sixth Amendment or the Equal Protection Clause of The United States Constitution</u>

Finally, Plaintiff briefly mentions that Jefferson County Defendants' conduct violated the Fourth and Sixth Amendments of the United States Constitution as well as the Equal Protection Clause. The Fourth Amendment protects individuals against unreasonable search and seizure. Plaintiff has not made any allegations that implicate the Fourth Amendment. The Sixth Amendment provides that each person shall enjoy the right to a speedy and public trial by an impartial jury, to be informed of the charges against him and to have the assistance of counsel for his defense. Once again, Plaintiff does not allege any facts that support an allegation that Plaintiff's Sixth Amendment rights were violated. As such, any claim brought under the Fourth or Sixth Amendment must be dismissed. Finally, Plaintiff states for the first time at the end of her Complaint that "the conduct of the Jefferson County defendants deprived the plaintiff her right to equal protection of the laws." (Doc. 1, Exhibit C at ¶ 12). To state an equal protection claim, a §1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumable historically disadvantaged) group. *Sherwin Manor Nursing Home v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir. 1994). Plaintiff does not plead any facts to support the conclusion that her alleged injury had anything to do with her identification with a particular group. Therefore, any request for relief under the Equal Protection Clause of the United States Constitution must be dismissed.

**C.    Venue**

Should this Court dismiss Kane County as a defendant and deny Jefferson County Defendants' Motion to Dismiss, Jefferson County Defendants respectfully request that this case be transferred to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §1404(a).

Pursuant to 28 U.S.C. §1404(a), a district court may transfer a civil action for the

convenience of the parties and witnesses and in the interest of justice to any other district or division in which it might have been brought. 28 U.S.C. §1404(a); *Amoco Oil Co. v. Mobil Oil Co.*, 90 F.Supp2d 958, 959 (N.D.Ill. 2000). In considering a motion to transfer venue, a court must first consider the convenience of the parties and the witnesses. *Law Bulletin Publishing Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1017 (N.D.Ill. 1998). In this analysis, the court should consider five factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *Id.* After this analysis, the court should consider whether transfer will serve the interest of justice. *Id.* at 1019. This issue includes such considerations as the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale. *Amoco Oil Co.,* 90 F.Supp.2d at 961-962.

This analysis favors transfer because most of the material events occurred in the Southern District, access to the site of the allegations would be difficult in the Northern District, Jefferson County would be greatly prejudiced by litigating in the Northern District, and the vast majority of witnesses are located in or near the Southern District. The allegations that Jefferson County jail personnel engaged in wrong doing means that the majority of the witnesses are in Jefferson County.

### 1.    Plaintiff's Choice of Forum

While the plaintiff's choice of forum is an important consideration, it is not absolute and will not defeat a well-founded motion to transfer. *Amoco Oil Co.,* 90 F.Supp.2d at 960; *Law Bulletin Publishing Co.*, 992 F.Supp. at 1017. If the chosen forum is not exclusively the place where the cause of action arose, plaintiff's choice of forum is only given consideration equal to other factors, including interests of justice, in determining whether the case should be transferred. *Robinson v. Town of Madison*, 752 F.Supp. 842, 847 (N.D.Ill. 1990).

In this case, the Plaintiff is Kimberly Gardner, who resides in the Northern District. However, the cause of action did not exclusively arise in the Northern District. Instead, the heart of the controversy involves alleged conduct in the Southern District. Therefore, Plaintiff's choice of forum remains a consideration, but should be accorded less deference by the Court.

### 2.    Situs of Material Events

While this case arguably has some limited connection to the Northern District, the

overwhelming majority of material events occurred in the Southern District. Jefferson County is the situs where the alleged conduct occurred and policy decisions were made concerning the training and supervision of prison employees. Although the Plaintiff was originally incarcerated in the Northern District, she was transferred to the Southern District for the majority of her incarceration. Since the majority of material events occurred in the Southern District, this factor weighs in favor of transfer.

### 3.    Relative Ease to Sources of Proof

The Southern District has obviously greater access to the jail in which Plaintiff was allegedly subject to the conduct that is that basis of her Complaint. While photographs or video recordings can be taken of the location in question, including Plaintiff's cell, the guard desk, its relation to Plaintiff's cell and the configuration of Jefferson County Jail's intercom system, it is much more burdensome, costly and inconvenient to do so from the Northern District. As the situs of Plaintiff's alleged injuries are much more easily accessible in the Southern District, this factor heavily favors transfer.

### 4.    Convenience of the Parties

It will be a great inconvenience and an undue hardship on Jefferson County to litigate this case in Chicago as opposed to the Southern District. Jefferson County will have to expend great sums of money in employee pay and transportation costs to bring party witnesses to Chicago from Mount Vernon. In addition, Jefferson County will have to try to find and then pay for sheriff's deputies to fill in for the party witnesses who have to travel hundreds of miles to Chicago to litigate this case. The fact that Plaintiff lives in the Northern District does not outweigh the burdens on Defendant Jefferson County described above. As litigation in the Northern District is a great inconvenience and a financial burden on the Defendants while the Plaintiff will incur little or no inconvenience litigating in the Southern District, this factor also favors transfer.

### 5.    Convenience of Witnesses

The convenience of witnesses is often viewed as the most important factor in the transfer analysis. *Law Bulletin Publishing Co.*, 992 F.Supp. at 1018. In analyzing this issue, the court looks to the nature and quality of the witnesses' testimony with respect to the issues of the case. *Id.* An examination of location of known witnesses thus far indicates that it would be much more convenient to the witnesses to litigate in the Southern District than in the Northern District.

In this case, Jefferson County Defendants can identify at least ten witnesses who reside in or near the Southern District.[1]  In addition to individuals formerly incarcerated with Plaintiff, the guards whose conduct Plaintiff complains still reside and/or work in the Southern District. Moreover, the individuals involved in Jefferson County Jail's policymaking and training decisions also work and reside in the Southern District.  The importance of their testimony is apparent as these witnesses were either incarcerated with the Plaintiff at the time of the incidents Plaintiff complains of, or working in the jail in which  Plaintiff was incarcerated and perhaps the subject of Plaintiff's specific complaints.  Their testimony will obviously be  material to the occurrence itself.   It is clear that the majority of witnesses are located in or near the Southern District and hundreds of miles from the Northern District.  Therefore, this factor weighs heavily in favor of transfer.

### 6.    The Interests of Justice

Overall, the interests of justice favor transfer .  While some factors are neutral (including the speed at which the case will proceed to trial and the court's familiarity with the applicable law), the relation of the community to the occurrence at issue and the desirability of resolving controversies in their locale heavily favor transfer.  The policies and potential constitutional violations of Jefferson County sheriffs and the treatment of Jefferson County jail inmates is of great concern to the people living in and near Jefferson County. These issues are more remote to a Northern District jury, who might justifiably resent having to dedicate their time to adjudicating issues involving the other end of the state. The Southern District with a local jury has a stronger interest in resolving issues of constitutional violations by governmental officials in its jurisdiction than the Northern District has in resolving issues of constitutional violations of governmental entities hundreds of miles away.  In addition, the people of Jefferson County would suffer prejudice if a large number of its sheriff's office had to leave for extended periods of time to testify in deposition and at trial, leaving the sheriff's office and the jail understaffed.  Therefore, the interests of justice also favor transfer.

## II.    CONCLUSION

WHEREFORE, Defendants, JEFFERSON COUNTY AND JEFFERSON COUNTY SHERIFF'S OFFICE by and through their attorney, STEPHEN R. MILLER, NIKOLETA

---

[1]    These include 3 former inmate witnesses who were incarcerated with Plaintiff at the time of the alleged events  who were subsequently paroled to the Second District, which is closer to Jefferson County than Kane County, including but not limited to: Tiffany Ochoa, (paroled from Lincoln Correctional Center to District 2), Carmen Rivera (paroled from Decatur Correctional Center to District 2), Carmen Rivera (paroled from Decatur Correctional Center to District 2).

G:\CASES\12089.Gardner\12089.Motions\12089.mt07.wpd

LAMPRINAKOS AND JOHANNA L. TRACY of MYERS MILLER & KRAUSKOPF, LLC,
respectfully request that the Court grant their Motion to Dismiss for all the foregoing reasons.

Respectfully submitted,

**MYERS MILLER & KRAUSKOPF, LLC**


By:     __s/Stephen R. Miller_____
        Stephen R. Miller

Stephen R. Miller  (6182908)
Nikoleta Lamprinakos (6274018)
Johanna L. Tracy (6278612)
MYERS MILLER & KRAUSKOPF, LLC
30 North LaSalle Street, Suite 2200
Chicago, IL 60602
(312) 345-7250

14